You may proceed. May it please the Court, my name is Robert Thompson. I represent Howard Miller. I have represented Howard Miller since 1991 on this same case. This matter is back before the Court based upon following his 1999 opinion whereby the Court indicated that the fine imposed by the Commission had no basis in the record and is therefore an abuse of discretion. The Court directed the CFTC in this case to arrive and to reconsider the penalty that it had assessed against Mr. Miller and to provide a penalty, if it will, that would show an act of reason grounded in the record before the agency. The record before the agency is not supported by the CFTC's assessment of $350,000 fine. And in fact, in their brief, they've indicated the shortcomings of the record and they have attributed those within the CFTC. In the petitioner's excerpt at 290, it carries a footnote number 9. And in that footnote, I would submit to you that it shows a disparity in the fines that have been the Commission is trying to impose against Mr. Miller. Mr. Miller, in his hearing down below, as the Court may remember, had seven witnesses against him out of 346 customers. And the Commission has tried to use these seven to show that Mr. Miller had violated the 346 customers. This, the Court rejected for obvious reasons, I believe, and correct reasons. But what the Commission then does is it goes through a history of their penalty assessments in the past. And then they indicate that, yes, they are able, by statute, to assess $100,000 per violation. But it does not do that. It says, since we're only going to assess $350,000, we don't need to go and complete the analysis. And I don't think, and I submit to the Court, that that is not At this point, I can't answer the question to Mr. Miller, the question being, what am I paying $350,000 for? Lying to your customers. Well, but the 700, I mean, the Why doesn't that work as an explanation? Well, it doesn't work. It's clear from the record that your client told these clients that he cold-called, mainly, didn't he? Some of them were cold-called, not all of them. Some of them were cold-called that he told them things that were just absolutely not true. Well, the ALJ found that there were untruths. But for these seven customers, they didn't lose anywhere close to the amount of money that the penalty assessment is set to indicate, nor did  At the end of the day, didn't he make in commissions almost an equilibrium with what his clients lost in their investments? I don't believe that's correct, Your Honor. He didn't make about $400,000 in commissions, and his clients didn't lose about $400,000? Well, we're talking about the seven I meant overall. I'm sorry? Overall. Isn't it correct, at the end of the day, that he earned off of all of these customers about the same amount in commissions, money in his pocket, that they lost on their investments? That is incorrect. That's not correct? That is not correct. Where would I find in the record the, that, was that analysis done? That analysis was not done, but what I think the Court may be referring to is that the brokerage house, which Mr. Miller was merely an employee, may have taken in somewhere close to that amount of commissions. Mr. Miller doesn't take in that kind of commission. In 1987, he didn't make $447,000 in commissions? Not him personally. The brokerage house may have. The customers didn't lose $448,000? The customers may have lost that amount. So Mr. Miller lost more than he made? The customers lost more than Mr. Miller made, correct. You know, the argument we just heard is somewhat relevant to the argument here as to what the standard of review is. And our precedents say the standard of review is abuse of discretion. You think we should abandon that, but we don't abandon the precedents without going on bank, which I doubt if we're going to do. So face it, we're reviewing for abuse of discretion. Very well. I believe that the record and the opinion in order by the CFTC, the 2004 opinion in order, is an abuse of discretion. And it's an abuse of what the mandate of the court was, this court was, to the CFTC when it remanded the matter. And why is that? Because it's not based on the record before the commission. Which is what, in reading? They're limited to the seven cases to assess a fine that is justified or warranted by those, solely by the seven cases. Yes. And why is $350,000 an abuse of discretion as a fine for those seven violations? It's an abuse of discretion, one, because there's nothing in the record that would support that type of assessment, especially in line of the penalties that have been assessed by the commission before and after Mr. Miller's case. What kind of penalty would it warrant? If there's going to be a penalty, I would think that the ALJ's decision of $50,000 would be in the ballpark. I think it's a bit high, but it would be in the ballpark. Well, I think the commission estimated the losses of the seven were around $100,000. Do you disagree with that? I do disagree with that. Again, I'll state further that there's nothing in the record that would indicate that that's the amount. Well, I wonder. Let's assume that it was $100,000. Then, as we indicated, a penalty to be imposed, it would be a deterrent. Just getting the money back is not the same as securing the conduct. Believe me, if I may, the penalty that has already been assessed, which is he's been banned from the industry, he hasn't worked in the industry for over 10 years, that is deterrent enough for any broker. Well, it is a penalty, but I'm afraid the whole statutory scheme assumes there will be a monetary penalty, too. That's correct. It does. And it is hard to say what's reasonable, but three times the amount lost doesn't strike me off and is unreasonable. Well, I believe and I would submit to you that that is unreasonable for the facts that were in this case and the seven individuals' losses or Mr. Miller's commissions generated as a result of that. Where did the $200,000 figure come from? I know there was originally $50,000, and I know that there was one $600,000. Yes, I can explain that if you'd like. When was the $200,000? Following the hearing on the facts before the ALJ, the ALJ came up with an initial decision of $200,000. Now, the way that the statute is written these days, before there could be a penalty assessment, there must be an assessment of an ability to pay. So we had a second set of hearings based upon the ability or inability of Mr. Miller to pay a fine. After that hearing, the ALJ, who had initially indicated $200,000, he had rolled the money back to $50,000, finding that Mr. Miller's ability to pay was 50, and so he assessed him 50. Now, that was another factual hearing where he had an opportunity to assess the credibility of not just Mr. Miller, but other division witnesses, and he did so. Now I recall, and that's when the appeal came. If you had not appealed or Mr. Miller had not appealed, would it still have gone to the commission, and could they still have increased? It was our belief that they order simultaneous briefs, so you can't wait to see who's going to appeal. It was our belief at the time that the government would have appealed, and if not, or the Division of Enforcement would have appealed, and if not, certainly the commission itself would have taken the matter up on its own. Thank you. Thank you. May I please report? I'm Chris Manhart for the Commodity Futures Trading Commission. We request that the court affirm the decision of the CFTC in this case because the commission properly complied with the remand order of this court. In receiving the case back, the commission redetermined the civil money penalty and imposed a penalty appropriate to the gravity of the offenses that was sufficient to deter future violations of the statute. What measure did the commission use? The commission used its measure reviewing the entirety of the circumstances to assess the gravity based on its prior case law, which took into account the nature of the offense, what kind of violation it was. In this case, the violation of its core provisions, the anti-fraud provisions of the statute. It also considered the state of mind of the offender, in this case relying upon finding that these were intentional actions. The ALJ back as far long ago as 1994 found that the violations were deliberate. Mr. Miller knew that his clients were losing money, yet made the false representations that he had made. The case reminds me a little bit of throwing darts. I mean, at one point the ALJ said $50,000? Yeah. The ALJ's $50,000 determination was based upon his inclusion of the analysis of what the statute used to include, which was a net worth inquiry, which Mr. Thompson referred to as the ability to pay prong. And the ALJ's original imposition was $200,000. That was remanded because he had not considered net worth. He imposed $50,000 following his analysis of net worth. The commission receiving that back found that Mr. Miller had waived his right to have net worth considered because he had not complied with discovery requests concerning financial information. That decision was affirmed by this court. The commission then imposed $600,000, which this court found was based on faulty assumptions. And on remand, the agency has made a decision that was grounded on the record, a reasoned decision based upon the nature of the violations. So just to finish out my question, so at one point someone thought it should be $50,000, and then $200,000, and then $600,000, and then $350,000. That is correct, Your Honor. But there are also explanations, as I said. All of those, I assume you would have been here explaining why each one was reasonable. No, well, the commission remanded to its own ALJ the first $200,000, and the commission also remanded it to its own ALJ concerning the $50,000. How? Well, because it had not considered a statutory factor. It wouldn't have increased it? Considering net worth wouldn't have increased it? It didn't reach that point because the net worth inquiry was not considered. All right. It was an infirm decision because then at that time the statute has been changed. Since 1992, the net worth was removed from the statute. The violations here predate 1992. Are you opposed to finding you don't have any interest in whether the person can pay it or not? As a statutory matter, no. What about as a practical matter? As a practical matter, the commission has expressly disavowed net worth and what it has defined as collectability considerations. That's correct. Pure punitive, huh? I'm sorry? Pure punitive. And remedial. I mean, yes. Well, how is it remedial to order someone to pay an amount that they have no present or future capability of paying? Well, the commission doesn't take the commission's policy is that penalty that a money penalty is necessary to ensure that there is no financial benefit for violations of the statute. How can there be financial benefit? I assume it's future financial benefit? No, retained benefit. In principle, I mean, the commission's prior case law refers to that wrongdoers should not benefit from their conduct. For example, in this case, the non-monetary sanctions that the court affirmed in 1999 removed Mr. Miller from participation in the industry, prospectively prevented him from committing other violations. I assume this amount, whatever it's finally fixed at, is not dischargeable in bankruptcy? Is that correct? That is correct. So whatever the number is, it's within the end of time? Well, actually, I should amend that. I believe under Chapter 13, fines are dischargeable, but under Chapter 7, they're not. Well, in this case, anyway, he had a chance to show his net worth and didn't show it. Isn't that right? Yes. And this court or the court or the commission found it waived, and in the first review of that case, this court affirmed that waiver of the net worth consideration. You said you want to make sure. The reason for the fine is to make sure, even though he's barred from the industry, is to make sure he doesn't retain the benefits of the illegal conduct. And also to deter others from believing that this is activity one can engage in and with the opportunity of succeeding until you're stopped and walking away with your rewards. Well, if you took away the reward, they wouldn't think you could walk away with a reward. That's correct, but not every. See, that's not the standard you use, stopping him from walking away with the award. You pick a figure that may be two or three times that large. That is correct. That is correct if the record shows. I mean, the commission has considered and focused on a variety of factors, which include financial circumstances, which include financial consequences. And if the record shows the losses of the customers, that's a factor the commission considers. If the record shows the gains the individual has attained, that is a factor to consider. But the consideration of financial consequences of the action that is subject to sanction is just one factor among a broader view of the gravity, the seriousness of this offense and the nature of how the investing public has been affected. Aside from your general principles, which may or may not be good general principles that the commission has, you're also dealing with a case and an individual. This man has been out of the industry for 10 years. He's 77 years old. You're trying to get $350,000 from him. I assume he's not going to have much of a career left. I don't know what he does. Do you have any interest in going to a mediator with him and arriving at a practical resolution that might be acceptable to both sides and resolve or not? I think generally our position would be it is not of that would not be a very fruitful exercise when the commission has turned to its sanctions. It is focused upon both the penalizing of the situation and the individual who is subject to the case as well as focusing on the public view of what the deterrent effect of this conduct, what statement needs to be made as a matter of law enforcement. No, the commission's interest is not a civil damages matter. For example, the commission does take into account in its gravity offense whether there has been restitution, whether there has been an attempt to ameliorate impact. Here there was none of that. Were those considerations on the record, that is something that the commission's stated policy is to consider. But at this stage, in the absence of any some such record, no, this has become purely a sanctions case. So just to summarize, this decision was well anchored in the record. The commission recognized that the court focused on the testimony of the seven customers. That testimony alone and the effect on those seven customers occurred over a period of four years, which reflected the scope and frequency of violation. The commission found that those individuals had lost approximately $100,000. The commission took that into account in considering the consequences. Do you know how much the individual profited from those $100,000, how much he made? The record does not reflect that precisely, and the commission expressly made a finding that the record did not show the particular gains. More subjectively, the record does contain information that the commissions were approximately half the value of the customer losses. But that is an extrapolation based on the general evidence that commissions were about half the customer's investment and loss. But, no, there is no precise value of the evaluation of the actual gains for these seven customers. If we extrapolated that way, he would have made $50,000. On these seven, with regard to these seven individuals. But, again, the commission does not look at this as a strict mathematics test. The statute provides for a maximum sanction of $100,000 per violation. In this instance, we have seven witnesses. The commission found that at least the minimum would be $700,000 as a maximum penalty, but that every misrepresentation is potentially a distinct violation. The commission chose not to, simply articulated that as a theory of analysis of violations and found that it's $350,000 here was well below any possible statutory maximum it might consider. But, no, we don't view it as, and the commission's case law, when it looks at what the record shows concerning financial consequences, is not a direct one-to-one translation of the dollars affected into a monetary penalty. The commission reserves the right, in the exercise of its discretion, to consider the entirety of the nature, the length of the activity, the impact on the people, the kind of violations that occurred. And taking those things in sum, the commission found that a $350,000 penalty was appropriate to the gravity of this factual circumstance and necessary for this charge. If they stopped that, we wouldn't be here. Yes. And obviously that's the commission's view. It could as easily have said $600,000 or $100,000 or $200,000 or $50,000, and probably all of those, whichever number they had happened to light upon, our problem is to say is that reasonable or unreasonable? Is that an abuse of discretion? Yes. I mean, you wouldn't be here if you exceeded the statutory maximum. It's only if you're within the statutory maximum that we have the function of deciding whether a penalty constitutes an abuse of discretion. Yes. In this circumstance, we're asking the commission finally settled on this figure and might as easily have settled on any other figure. It doesn't mean that's necessarily the final answer. I fully understand that, Your Honor. And that's one reason, as the Court sees in the opinion, the commission has had its own analysis trying to refer back and drawing comparability analysis to its prior applications of penalties so as to build a more robust structure for interpretation of its application of its discretion. But nevertheless, every single case is based on its discrete facts because comparability clearly has its limits. No two cases are identical, particularly in a multiyear incidence of a commission of fraud and how the customers have been affected. But it is a factor, comparability? Comparability is a consideration for the commission. It's not expressly a factor in determining gravity. Would it be your opposing counsel's statement that if you use comparability, this would be higher than any other? No, no, we very much disagree with that. The footnote that counsel referred to was an illustration by the commission that there are circumstances where the financial gain by appearances, the financial gain evident on the record was more than the fine on the record. Those cases all predate, I believe, the change in the statute. So all those cases have depressed financial penalties because of the networked analysis. Thank you. For the reasons asserted, we request that the Court affirm the decision below. Thank you. Counsel. As for the last point that the Court asked and counsel answered, I'd merely direct you to the footnote nine of the opinion in order because that's not what they say. They set forth a history of relevant cases, what they consider to be relevant. And in that, you will see that most of those cases, if not all, are looking at somewhere between 40% and 50% of the monies gained by those individuals. That's not the case here. There's nothing like that. They're looking for, you know, ten times the amount of gain or five times, you know, some amount that has no bearing to the facts before this Court And I might add that at the time that they ruled in 2004, there was a dissent. And the dissent was by the, well, there were only three commissioners at the time, three out of five. And the dissent was by the person that became the acting chair. And the acting chair indicated that this was not a decision that was satisfactory to the Ninth Circuit opinion. She disagreed with the way that they arrived at assessing the $350,000 penalty. And that's what we are saying to the Court today, that the Court was pretty clear on what the CFTC should do when they re-evaluated the assessment of a penalty, and they did not do that. And with that, I'll submit, unless there's other questions. Yes, one question. You're talking about footnote 9 in your opinion. Where is it in the exit? Because the opposing counsel says that all the cases were prior to the commission's change in rule with respect to considering net worth. That would be ‑‑ I have it as page 3 of the opinion in order on the excerpt, the petitioner's expert. 301. And if you ‑‑ if the Court were to review 301, and then ‑‑ I'm sorry. But 301 covers the same matter, but this is actually a part of the dissent. As far as the opinion in order in chief, that would be page 290. 290? 290 in the opinion in order in chief. All right. Thank you, counsel. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. The case case directory will be submitted. Thank you both very much.
judges: Reinhardt, Noonan, Hawkins